IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN GUILDAY,<br>            **Plaintiff,**<br><br>v.<br><br>CRISIS CENTER AT CROZER-<br>CHESTER MEDICAL CENTER et al.,<br>            **Defendants.** | CIVIL ACTION<br><br><br><br>NO.  21-2010 |

## MEMORANDUM OPINION

On June 2, 2020, Plaintiff was taken from his home by police and transported to the Crozer-Chester Medical Center ("Crozer-Chester") for an emergency psychiatric examination upon the petition of his father, a physician. Plaintiff spent seven to eight days in Crozer-Chester, during which time he refused all medical treatment and suffered mental and physical distress. Plaintiff now brings this petition against various entities affiliated with Crozer-Chester, with Delaware County and with the Commonwealth of Pennsylvania, alleging that the committal and related events violated his constitutional, statutory, and state law rights. Defendants the Pennsylvania Department of Human Services and its Secretary, Meg Snead (collectively, the "Commonwealth Defendants") have filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Motion shall be granted and Plaintiff's claims against the Commonwealth Defendants will be dismissed with prejudice.

### I. FACTUAL ALLEGATIONS

Plaintiff's ordeal began on June 2, 2020, when the police transported him, in handcuffs, from his home to Crozer-Chester. The police acted on authority of a warrant issued by the

1

Delaware County Administrator, Tracy Halliday, or her representative, upon the application of Plaintiff's father. The procedures for obtaining the warrant issue from the Pennsylvania Mental Health Procedures Act ("MHPA"), a statute that permits the involuntary emergency examination and treatment of an individual whose mental capacity is "so lessened that he poses a clear and present danger of harm to others or to himself." 50 Pa. C.S.A. § 7301(a). The MHPA authorizes an initial period of involuntary treatment of 120 hours or less. 50 Pa. C.S.A. § 7302.

After undergoing testing for COVID-19, Plaintiff was examined by a Crozer-Chester physician. The next day, June 3, he was transferred to the Center's North Campus. At the North Campus, he was examined by another physician, Doctor Amy Bebawi. He was told that Doctor Bebawi was going to file a petition for extended involuntary treatment of up to 20 days. Such a petition may be filed with the Pennsylvania Court of Common Pleas upon a determination that the need for emergency treatment is likely to exceed 120 hours. 50 Pa. C.S.A. § 7303(a). Plaintiff was told that he could challenge the petition at a hearing, and that he would be provided an attorney. Such hearings are mandated by the MHPA upon receipt of an application for extended treatment. *Id.* § 7303(b). If the judge or mental health review officer determines that the person is in need of continued treatment, a written certification for extended involuntary treatment will issue. *Id.* § 7303(c)-(d). A copy of the certification must be served on the committed individual. *Id.* § 7303(e).

Doctor Bebawi testified at the extended treatment hearing on June 5. Plaintiff alleges that he was not able to consult with his attorney before or during the proceeding and maintains that he never received a copy of the certification for extended involuntary commitment. On June 8, Dr. Bebawi and Plaintiff spoke with his father, who said that he could come home. He was released shortly thereafter.

## II. LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In conducting this analysis, legal conclusions are disregarded and well-pleaded facts are taken as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences are drawn in the plaintiff's favor. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021). In particular, a *pro se* complaint is liberally construed. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III. DISCUSSION

The Complaint alleges that the Commonwealth Defendants had statutory duties under the MHPA to "approve facilities for involuntary commitment" and to "assure the availability and equitable provision of adequate mental health services." It further avers that they do not have an "effective communication system" to serve or transmit certifications for extended involuntary treatment. The Complaint contends that the Commonwealth Defendants' actions in connection with these allegations violate the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution.

In his response to the Commonwealth Defendants' Motion to Dismiss, Plaintiff expands upon his theories of liability contending that the Commonwealth Defendants must also be held liable for, among other things, (1) "enacting an unconstitutional law"; (2) "using rules, regulations, and forms" to issue warrants that he says are unconstitutional because they rely on

unverified facts and biased information, lack particularity, and are valid for 30 days; (3) "using rules, regulations, and forms" to "seize a person . . . without any Miranda or similar warning" and without "adequate notice . . . for the reasons of the search"; and, (4) "using an investigative . . . and information adjudicatory system . . . based on forms, rules, and regulations" that apply an unconstitutional burden of proof.

### A. Claims Against the Department of Human Services

State entities like the Pennsylvania Department of Human Services are protected from suit under Section 1983 by two overlapping doctrines.[1]

*First*, Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). "The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Id*. (internal citation omitted) (citing *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472-73 (1987)). "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity," *id.*, and Pennsylvania has not waived its immunity. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (citing 42 Pa. C.S.A. § 8521(b)). As an administrative department created by the State, the Department of Human Services is therefore shielded from Plaintiff's suit by sovereign immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of

---

[1] Plaintiff alleges that the Department of Human Services is "sufficiently autonomous to prevent it from being an arm of the state" because it receives federal funding. It is firmly established, however, that the Department of Human Services is a state entity. *See* 71 Pa. C.S.A. § 61(a) (defining the Department as an administrative department charged with the executive and administrative work of the Commonwealth).

course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").[2]

*Second*, "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes"—such as the Department of Human Services—are not "persons" subject to suit under Section 1983. *Will*, 491 U.S. at 70-71.

For these reasons, Plaintiff cannot state a Section 1983 claim against the Pennsylvania Department of Human Services and, as amendment would be futile, any such claims will be dismissed with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

### B. Claims Against the Secretary

The Complaint does not specify whether Secretary Snead is named as a defendant in her official or personal capacity. Both possibilities will accordingly be addressed.

#### i. *Official Capacity*

In an action seeking monetary relief, "a suit against a state official in his or her official capacity . . . is no different from a suit against the State itself." *Will*, 491 U.S. at 71. Therefore, an official of the State sued for damages in her official capacity is not a "person" under Section 1983. *Id*. Plaintiff's claims against Secretary Snead in her official capacity for monetary damages must therefore be dismissed with prejudice, as futile. *Grayson*, 293 F.3d at 114.

Conversely, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*,

---

[2] Sovereign immunity bars Plaintiff's claims against the State for damages and injunctive relief alike. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

473 U.S. 159, 167 n.14 (1985)).  Therefore, the Eleventh Amendment does not bar official-capacity actions seeking to enjoin future conduct.  *Pennhurst State Sch.*, 465 U.S. at 102-03.

Plaintiff's injunctive relief claims, however, fail because he is not seeking prospective relief and, thus, does not have standing to seek injunctive relief.  "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  To satisfy this requirement, Plaintiff must allege that he "has sustained or is immediately in danger of sustaining some direct injury" that is "'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.* at 102.[3]  The Complaint seeks redress for past injuries related to Plaintiff's involuntary committal in June 2020.  It alleges no facts suggesting that Plaintiff will be involuntarily examined or committed again—any future injury is purely conjectural.  Because there is no "real and immediate threat," Plaintiff has no standing to seek injunctive relief.  His claims for injunctive relief will be dismissed with prejudice, as amendment would be futile.  *Grayson*, 293 F.3d at 114.[4]

---

[3] The Commonwealth Defendants based their argument that Plaintiff cannot seek injunctive relief on Pennsylvania common law.  This reliance is misplaced.  The federal courts apply federal law, not state law, to claims arising from federal statutes.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("*Except* in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." (emphasis added)).  Furthermore, federal law specifically governs the availability of equitable remedies in federal court.  *See First Camden Nat. Bank & Tr. Co. v. Aetna Cas. & Sur. Co.*, 132 F.2d 114, 118 (3d Cir. 1942); Fed. R. Civ. P. 65 (Injunctions and Restraining Orders).

[4] In his brief responding to the Commonwealth Defendants' Motion to Dismiss, Plaintiff maintains that he "has been threatened with the use of the MHPA being used against him again" and that he "has avoided certain areas so as not to even potentially encounter individuals who may try to use the MHPA against him again erroneously."  This new factual allegation cannot be considered because the Complaint "may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (alteration in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1984))); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  In any case, the allegation that an unknown person threatened Plaintiff with an MHPA

### ii. *Personal Capacity*

"Personal-capacity suits seek to impose personal liability upon a government official for actions he [or she] takes under color of state law." *Graham*, 473 U.S. at 165. "[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983" and the Eleventh Amendment "does not bar such suits." *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

The Third Circuit has "identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, "liability may attach if [a supervisor], with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." *Id*. (cleaned up) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Alternatively, "'a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Id*. (quoting *Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d at 586); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

The Complaint makes only the following allegations against Secretary Snead: (1) that she is the "executive policy maker" for the Department of Human Services; (2) that she had

---

warrant, which the county administrator would have to approve and issue, at an unknown time for unknown reasons is too vague and conclusory to merit an assumption of truth. *Iqbal*, 556 U.S. at 679. Nor does it articulate a "real and immediate threat of injury." *Lyons*, 461 U.S. at 106 (Plaintiff had no standing to enjoin police use of chokehold against him because he could not allege either that "*all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter" or that "the City ordered or authorized police officers to act in such manner." (emphasis in original)).

responsibility to approve treatment facilities and assure the "availability and equitable provision of adequate mental health services"; and, (3) that she "does not have or is not using an effective communication system" for the service or transmission of certifications for extended involuntary treatment.[5]  In his response to the Commonwealth Defendants' Motion to Dismiss, Plaintiff adds additional allegations to the effect that Secretary Snead "in putting forth, approving, and enacting rules, regulations, and forms used in the MHPA, violates constitutional standards and rights, . . . acting in a purposefully and deliberately discriminating way."

These allegations amount to little more than a general description of Secretary Snead's official responsibilities and a bare assertion that she violated the constitution in exercising those responsibilities.  They are just the kind of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that the Supreme Court held will not suffice to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (allegations that officials "knew of, condoned, and willfully and maliciously agreed to" harsh conditions of confinement "as a matter of policy" did not state a claim).  The Complaint alleges no facts suggesting that Secretary Snead participated in, directed, or knew of and acquiesced in Plaintiff's involuntary commitment or in the service of the certification of extended treatment (or lack thereof).  Nor do they identify any "policy, practice or custom" established and maintained by her that directly caused harm to Plaintiff.  Plaintiff does not state against the Secretary a "claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S. at 570).  Accordingly, his claims against Secretary Snead in her personal capacity will be dismissed with prejudice, on futility grounds.  *Grayson*, 293 F.3d at 114.

---

[5] To the extent this allegation is made to support a claim for a violation of Section 303(e) of the MHPA, it is unavailing because "Section 1983 does not provide a cause of action for violations of state statutes."  *Benn*, 371 F.3d at 173.

An appropriate order follows.

                              **BY THE COURT:**

                              **/s/Wendy Beetlestone, J.**

                              **WENDY BEETLESTONE, J.**